<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOYCE DIAZ,** *Plaintiff,* v. **COMMISSIONER OF SOCIAL SECURITY,** *Defendant.* | Civil Action No. 19-21279 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Joyce Diaz's ("Plaintiff" or "Diaz") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), of Administrative Law Judge Richard West's (the "ALJ" or "Judge West") decision denying Plaintiff's applications for Disability Insurance Benefits ("DIB"). <u>See</u> ECF No. 1. For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is **AFFIRMED**.

**I. STANDARD OF REVIEW AND APPLICABLE LAW**

**A.   Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of legal precepts is subject to plenary review, but her factual findings must be affirmed if they are supported by substantial evidence. <u>Markle v. Barnhart</u>, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); <u>see also</u> <u>McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d 357, 360 (3d Cir. 2004) (explaining that substantial evidence is "more than a mere

scintilla" but less than a preponderance). The Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the [Plaintiff] and corroborated by family and neighbors; and (4) the [Plaintiff's] educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. App'x 167 (3d Cir. 2014).

### B.     The Five-Step Disability Test

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). To determine whether a claimant is disabled under the Act, the Commissioner applies a five-step test. 20 C.F.R. § 404.1520. First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572. If the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The

regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. See 20 C.F.R. § 404.1520(c).

At the third step, the Commissioner must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established, and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the analysis proceeds.

Before the fourth step, the Commissioner must determine the claimant's "residual functional capacity" ("RFC") to perform work activities despite the limitations from the claimant's impairments. 20 C.F.R. § 404.1520(e). In considering a claimant's RFC, the Commissioner must consider "all the relevant medical and other evidence" in the claimant's record. Id.; 20 C.F.R. § 404.1545(a)(1). Then, at step four, the Commissioner must decide if the claimant has the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, then the claim for benefits must be denied. 20 C.F.R. § 404.1520(a)(4)(iv).

Finally, at the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that [the claimant] can do given [her] residual functional capacity and vocational factors." 20 C.F.R. § 404.1520(a)(4)(v). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

## II.     BACKGROUND

### A.     Procedural History

In September 2007, Plaintiff first filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging that she became disabled on April 19, 2007. See Administrative Transcript ("Tr.") 117, ECF No. 5. After a hearing, Administrative Law Judge James Andres issued a decision denying both applications on January 14, 2010. Tr. 117-24. Plaintiff appealed and the Appeals Council remanded. See Tr. 131. On remand, on June 8, 2011, Administrative Law Judge Dennis O'Leary again denied both of Plaintiff's applications. Tr. 131-38.

Five years later, on February 17, 2016, Plaintiff filed the at-issue DIB application claiming disability beginning on June 9, 2011, the day after her prior DIB application was denied. See Tr. 12. Plaintiff alleged disability from (1) back injury, (2) colitis, (3) irritable bowel syndrome, (4) depression, (5) anxiety, (6) bipolar disorder and schizophrenia, (7) carpal tunnel, (8) nerve damage, (9) skeletal and joint pain, and (10) plantar fasciitis. Tr. 286. Plaintiff's application was denied on August 11, 2016, and then again upon reconsideration on November 25, 2016. See Tr. 12. Concurrently, Plaintiff filed a Supplemental Security Income ("SSI") application, which was later granted. See id.

Diaz subsequently requested a hearing before an administrative law judge on January 30, 2017, Tr. 157-58, and appeared before ALJ Richard West at a hearing on September 18, 2018, Tr. 30. Judge West issued an opinion on October 5, 2018, holding that Diaz was not disabled. Tr. 12-23. Diaz appealed to the Appeals Council, who declined to review the ALJ's decision. Tr. 1-3. On December 11, 2019, Plaintiff filed the instant appeal. ECF No. 1.

**B.     The ALJ's Decision**

Judge West determined that Plaintiff was not disabled at step five of the five-step disability analysis.  At step one, the ALJ determined that Diaz had a date last insured of December 31, 2012 and did not engage in substantial gainful activity from the alleged disability onset date of June 9, 2011 through the date last insured.  Tr. 14.

At step two, the ALJ determined that Diaz had the severe mental and physical impairments of mixed anxiety, depressive disorder, and degenerative disc disease of the cervical and lumbar spine.  Tr. 14.  Judge West considered Plaintiff's other physical ailments but concluded that the medical evidence did not support a finding that these ailments were medically determinable impairments.  Tr. 14-15.

At step three, the ALJ determined that, through the date last insured, Diaz did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 15.  As to Diaz's mental impairments, Judge West extensively considered Diaz's consultative examinations with Dr. Gupta and Dr. Theodore Brown, as well as a function report detailing Diaz's day-to-day living.  Tr. 15-17.  As to Diaz's physical impairments, Judge West stated that he considered "all of the evidence" and "the opinion of the Disability Determination Services (DDS) medical consultants who evaluated the issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion."  Tr. 15.

The ALJ then determined that Diaz had the residual functional capacity to perform sedentary work, with several exceptions:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ladders, ropes,

> scaffolds, ramps, and stairs. She can occasionally balance, stoop, kneel, crouch, and craw. She can frequently handle and finger. She can understand, remember and carry out simple instructions. She can deal with changes to essential job functions on an occasional basis.

Tr. 17. In reaching this determination, the ALJ examined medical evidence in the record and articulated reasons for his assignment of weight to opinion evidence. Tr. 17-21.

At step four, the ALJ found that Diaz could not perform any past relevant work through the date last insured because the exertional demands of Diaz's past relevant work as a fast food restaurant manager exceeded Diaz's residual functional capacity. Tr. 21.

At step five, the ALJ determined that Diaz could have performed "jobs that existed in significant numbers in the national economy" based on Diaz's age, education, work experience, and residual functional capacity. Tr. 21-22. The ALJ adopted the vocational expert's testimony that Diaz could, for example, still work as an assembler, table worker, or preparer. Tr. 22. The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act. Tr. 23.

**III.   ANALYSIS**

Plaintiff urges the Court to reverse or, in the alternative, vacate and remand, the ALJ's decision for two reasons. First, Plaintiff argues that Social Security Ruling ("SSR") 18-01p, 83 Fed. Reg. 49613 (Oct. 2, 2018),[1] required the ALJ to determine Plaintiff's disability onset date with the help of a medical advisor and that the ALJ erred by failing to do so. Second, Plaintiff argues that the ALJ failed to adequately consider whether the severity of Plaintiff's mental and

---

[1] The Court notes that Plaintiff cites to SSR 83-20, a rescinded social security ruling which was replaced by SSR 83-20 on October 2, 2018.

physical impairments equaled those of the listings at step three. The Court disagrees and addresses each argument in turn.

First, the ALJ has ultimate discretion in deciding whether to seek medical expert ("ME") testimony regarding the onset date of disability. SSR 18-01p makes clear that the ALJ "always" has discretion in "the decision to call on the services of an ME." SSR 18-01p; see also Kushner v. Comm'r of Soc. Sec., 765 F. App'x 825, 829 n.3 (3d Cir. 2019) ("SSR 18-01p gives ALJs complete discretion over the calling of medical experts."). SSR 18-01p therefore directly refutes Plaintiff's argument that an ALJ must necessarily consult a ME, and the Court sees no error in the ALJ's decision not to do so in the instant matter.

In fact, the ALJ's decision not to seek the advice of a medical expert here was particularly well supported, because neither party disputes the onset of Plaintiff's disability as June 9, 2011. See Pl. Br. 19, ECF No. 13 (conceding that Plaintiff could not allege "disability at any point prior to the day after [the] prior decision" and so Plaintiff's earliest "alleged onset date in the decision at bar is June 9, 2011"). As discussed above, in a previous application Plaintiff alleged disability beginning on April 19, 2007, but this application was ultimately denied on June 8, 2011. See Tr. 131-38. Therefore, the previously adjudicated period here is from April 19, 2007 to June 8, 2011 and the current adjudication period started on June 9, 2011.[2] For these reasons, it was not an abuse

---

[2] While SSR 18-01p permits an ALJ to determine that the established onset date is in a previously adjudicated period, the claimant must meet "rules for reopening" the prior adjudication, as well as the "statutory definition of disability and the applicable non-medical requirements during the previously adjudicated period." SSR 18-01p. Moreover, reopening is discretionary. Id. Plaintiff does not argue for reopening, and the Court sees no grounds for revisiting the earlier period.

of discretion for the ALJ to decline to consult a medical examiner regarding the onset date of Plaintiff's disability.

Second, substantial evidence supports the ALJ's analysis at step three. In concluding that Plaintiff's mental impairments did not meet or equal the criteria of listing in subsection 12.04 singly or in combination, the ALJ extensively considered relevant medical evidence in the record. Tr. 15-17. To meet criteria B of listings in subsection 12.04, the claimant's mental impairments must lead to "an extreme limitation of one, or marked limitation of two, of [several] areas of mental functioning." 20 C.F.R. pt. 404, subpt. P., app. 1 § 12.04B. The ALJ justifiably held that Diaz had (1) a mild limitation in understanding, remembering, or applying information; (2) a mild limitation in interacting with others; (3) a moderate limitation in concentrating, persisting, or maintaining pace; and (4) a moderate limitation in adapting or managing self. Tr. 16.

Plaintiff initially argues that the ALJ failed to adequately explain the conclusions reached in the above discussion of criteria B. Plaintiff specifically contends that the ALJ omitted "inconvenient findings" from Plaintiff's consultative examination with Dr. Gupta and other "mental status findings." Pl. Br. at 30. These mental status findings, Plaintiff states, include licensed clinical social worker John Folwarski's ("Folwarski") treatment records from Raritan Bay Mental Health Center. See Tr. 395-98.

The Court is unpersuaded. The ALJ did, in fact, support his conclusions with multiple sources of evidence: function reports, Plaintiff's consultative examination with Dr. Gupta, and Plaintiff's consultative examination with Dr. Theodore Brown. Tr. 16. Notably, the ALJ explicitly considered Dr. Gupta's 2008 examination notes in concluding that Plaintiff could still fairly reason, perform simple calculations, and had fair "[p]ast and remote memory." Tr. 16. And the ALJ did not ignore Folwarski's mental status findings, but rather considered and ultimately

8

discounted that record as too remote and originating from an "unacceptable medical source."[3] Tr. 20.

Plaintiff next contends that the ALJ failed to consider listings in criteria A of subsection 12.04 in the step three mental impairment analysis. However, the Court again disagrees. An ALJ need not follow a specific formula in a step three analysis. See Wisniewski v. Comm'r of Soc. Sec., 210 F. App'x 177, 180 (3d Cir. 2006) ("We have never required an administrative law judge to identify or analyze the most relevant listing."); Jones, 364 F.3d at 505 (explaining that an administrative law judge need not "use particular language or adhere to a particular format in conducting his analysis").[4] Therefore, in light of ALJ's overall careful treatment of multiple sources of evidence in determining Plaintiff's mental limitations, the ALJ's conclusions regarding Plaintiff's mental impairments at step three are supported by substantial evidence.

Nor did the ALJ fail to adequately consider the severity of Plaintiff's physical impairments. At step three, the ALJ held that Plaintiff had no physical impairment that met or medically equaled the severity of those of the impairments in the listings. Tr. 15. The ALJ noted that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment" and that he reviewed "all of the evidence," including "the opinion of the Disability Determination Services." Tr. 15.

Plaintiff argues that the ALJ's step three determination regarding Plaintiff's physical impairments lacks specificity and urges the Court to adopt the Third Circuit's approach in Burnett

---

[3] The ALJ articulated reasons for discounting Folwarski's records in the RFC determination as opposed to in the step three analysis. This is of no matter, because as discussed infra, the Court considers the record as a whole in determining whether substantial evidence supports the ALJ's step three conclusion.

[4] It is unclear to the Court whether Plaintiff argues that the ALJ should have considered criteria A of subsection 12.04 or 12.06, both of which concern medical disorders. See Pl. Br. 29 (referencing that the ALJ considered subsection 12.04 but arguing that the ALJ failed to consider "the A criteria" and subsection 12.06). Because an ALJ need not follow a specific formula in determining whether a plaintiff's impairments meet the listings, this distinction is of no import to the Court's analysis.

v. Commissioner of Social Security Administration, 220 F.3d 112 (3d Cir. 2000). In Burnett, the Third Circuit instructed the district court to remand to the ALJ for further consideration because the ALJ's "hopelessly inadequate step three ruling" consisted only of a conclusion without any "discussion of the evidence" or "explanation of the reasoning." Id. at 120. Specifically, the ALJ in Burnett merely stated that "although [Burnett] has established that she suffers from a severe musculoskeletal [impairment], said impairment failed to meet or equal the level of severity of any disabling condition." Id. at 119 (alterations in original) (citation omitted).

Here, on the other hand, the ALJ explained that he had "reviewed all of the evidence" and also "considered the opinion of the Disability Determination Services" in reaching his conclusion. Tr. 15. While this statement may seem conclusory in isolation, a reviewing court must consider the ALJ's decision as a whole to determine if substantial evidence supports the ALJ's step three conclusion. See, e.g., Jones, 364 F.3d at 505 (suggesting that the primary concern of Burnett is to ensure "sufficient development of the record and explanation of the findings to permit meaningful review"); Desorte v. Comm'r of Soc. Sec., No. 17-11407, 2019 WL 1238827, at *5 (D.N.J. Mar. 18, 2019) (explaining that the ALJ's "arguably terse" step three analysis "must be viewed in the context of the opinion as a whole which included a comprehensive discussion of Plaintiff's severe impairments").

The ALJ's discussion of Plaintiff's severe physical impairments at step two and extensive treatment of the record at the RFC determination before step four shows that the ALJ sufficiently considered all relevant evidence. At step two, the ALJ determined that Plaintiff suffered from the severe impairments of "degenerative disc disease of the cervical and lumbar spine." Tr. 14. The ALJ held that the objective medical evidence did not demonstrate that Plaintiff's other alleged physical ailments rose to the level of "medically determinable impairment." Tr. 15. In finding

that Plaintiff's alleged carpal tunnel syndrome was not severe, for example, the ALJ considered the New Jersey Division of Disability Determination Service's report in 2008 and noted that Plaintiff's "grip strength appeared normal on testing." Id.

Additionally, in making the RFC determination, the ALJ considered evidence in the record in detail before concluding that "overall, the record contained minimal evidence during the period in question." See Tr. 18-19. The record belies Plaintiff's contention that the ALJ rejected all evidence before and after the relevant period: the ALJ did consider all evidence in the record concerning Plaintiff's physical impairments and merely assigned "little" or "partial weight" to such evidence based on the evidence's recency and probative value.[5] See Tr. 18-20. For example, the ALJ recognized that evidence before and after the relevant period "indicated restrictions," but the evidence was "remote from the period" and did not support "greater restrictions" than those in the ALJ's RFC determination. Tr. 19.

Taken as a whole, it is clear that more than a "mere scintilla" of evidence in the record supports the ALJ's step three analysis. See Biestek v. Berryhill, 139 S. Ct. 1148 (2019).

### IV. CONCLUSION

For the foregoing reasons, the determination of the Commissioner is **AFFIRMED**.

Date: August 17, 2021

            */s Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**

---

[5] Courts have recognized that medical evidence after the date last insured may have limited probative value, depending on whether it relates back to or is otherwise close enough in time to the relevant period. See, e.g., Kuhl v. Saul, No. 18-3337, 2020 WL 6537198 at *11 (D.N.J. Nov. 6, 2020) (determining that the ALJ did not improperly assign limited weight to evidence because plaintiff failed to explain how medical evidence dated over a year after plaintiff's date of last insured "related back to the period at issue"); Beety-Monticelli v. Comm'r of Soc. Sec., 343 F. App'x 743, 746 (3d Cir. 2009) (finding that the ALJ properly held that evidence four to five years after the relevant period "shed no light" on plaintiff's condition during the relevant period).